A97A0763. FAIRBANKS v. THE STATE.
(484 SE2d 693)

ELDRIDGE, Judge.

A Clayton County jury found appellant Charles Henry Fairbanks guilty of an aggravated assault on his ex-wife during which appellant shot her in the throat with a handgun. We affirm his conviction.

1. Appellant alleges error in the introduction of two prior difficulties between the parties. First, appellant contends that the state failed to make the appropriate showings for the introduction of such evidence under *Williams v. State*, 261 Ga. 640, 641 (409 SE2d 649) (1991). At trial, appellant failed to object to the admissibility of this

evidence based on the *Williams* standard.[1] Accordingly, this enumeration of error has been waived. *Gable v. State*, 222 Ga. App. 768, 770 (476 SE2d 66) (1996); *Phillips v. State*, 215 Ga. App. 526, 527 (4) (451 SE2d 517) (1994).

Appellant also challenges the adequacy of the notice of prior difficulties and contends that the state introduced more than the two incidents of prior difficulties contained in the written notice to the appellant. Appellant argues that he was thus unprepared to defend against additional instances of prior difficulties. This claim is meritless.

Pursuant to Uniform Superior Court Rule 31.1, the state provided the appellant with notice of the two prior difficulties it intended to introduce against him: stalking on February 7, 1994, and terroristic threats on September 27, 1993. Prior to trial, the appellant claimed full knowledge of all prior difficulties between the parties and did not at any time contest the adequacy of the notice.

Moreover, contrary to appellant's assertions, the state did not go beyond the parameters of the notice when introducing evidence of the two prior difficulties. The first indication that any additional prior difficulties may have occurred between September 1993 and February 1994 arose through suggestion by appellant during cross-examination. There was no error.

2. In his next enumeration of error appellant asserts that reversible error occurred when the state improperly commented on appellant's Fifth Amendment right to silence pursuant to the Supreme Court of Georgia's holding in *Mallory v. State*, 261 Ga. 625, 629 (5) (409 SE2d 839) (1991). For the reasons that follow, we disagree.

First, a review of the record demonstrates that appellant did not object to that portion of the state's cross-examination which he now contends is reversible error as an improper comment on his right to remain silent. Consequently, this enumeration of error is waived. *Pruitt v. State*, 176 Ga. App. 317, 321 (335 SE2d 724) (1985); see also *Smith v. State*, 221 Ga. App. 428 (472 SE2d 4) (1996); *Harrison v. State*, 213 Ga. App. 366, 367 (1) (444 SE2d 613) (1994).

Further, a review of the record demonstrates that appellant's contentions are meritless since the appellant testified that he freely and voluntarily talked to the police.[2] During direct examination,

---

[1] The proper analysis for the admissibility of prior difficulties is found in *Maxwell v. State*, 262 Ga. 73, 75 (414 SE2d 470) (1992), which extends the *Williams* similar transaction admissibility threshold to evidence of prior difficulties between the parties. See also *Stewart v. State*, 263 Ga. 843, 847 (440 SE2d 452) (1994), Hunt, P. J., dissenting (distinguishing evidence of prior difficulties from similar transaction evidence).

[2] The case sub judice is entirely distinguishable from *Mallory*, supra. In *Mallory*, the issue concerned the introduction during the state's case-in-chief of that portion of Mallory's post-arrest statement regarding why he had not come forward during the investigation to

appellant took the stand and testified that he was "placed under arrest by Officer Brown, the black officer. Officer Cash did not put handcuffs on me, he did not take me to the car. Officer Cash is the one who took the gun and was in control of the gun. Officer Brown took me to the police car, which was driven by Officer Cash. Officer Brown, I told him, Lorraine came into my house and had these different restraining orders and stalking charge on me. She came into my house and she tried to kill me, stab me with that knife. He said, just wait until the investigator comes here and he'll take your story, and nobody ever came back and talked to me in the car."

On cross-examination, appellant, again, testified as to his discussions with the police: "[Prosecutor]: And you told officer Brown that you shot your wife in self-defense? [Appellant]: Yes, ma'am. [Prosecutor]: You're telling this under oath? [Appellant]: Yes, ma'am."

Again, on re-cross, appellant testified concerning his statements to the officer: "[Prosecutor]: Did you tell Officer Brown about this knife that she allegedly had? [Appellant]: Yes, ma'am, I did. [Prosecutor]: Did you want to try to point it out to him? [Appellant]: Well, he wanted to get me into the car and I guess secure the area. He said an investigator would come and talk to me. I think his name was, it's on the police report. The investigator's name was, if I could see that police report, I could tell you his name. [Prosecutor]: I'm interested in what you told Officer Brown. . . . You told him about the knife that she allegedly had? [Appellant]: Yes, ma'am."

Thereafter during a pointed second redirect, appellant testified that he wanted to talk to an investigator, but one was not forthcoming: "[Defense Attorney]: Did you ever talk to an investigator from the City of Forest Park? [Appellant]: No investigator talked to me, no. [Defense Attorney]: You talked to the police officers that have testified, but you never talked to an investigator? [Appellant]: No. No investigator ever showed up at the — I didn't see an investigator. [Defense Attorney]: Did you ever talk to an investigator since you've been arrested? [Appellant]: No."

The state then countered on a second re-cross: "[Prosecutor]: Mr. Fairbanks, isn't it because when Officer Cash entered the apartment, you said, I don't want to make any statements until I've got an attorney. . . . [Appellant]: The truth is I did say that, yes, I need to have

---

explain his innocence. Id. at 629. The instant case involves a defendant who voluntarily testified at trial on his own behalf regarding his alleged repeated statements to the police from the moment the investigation began with the arrival of the officers at his front door, and his stated intention to communicate further with any investigator who would interview him. Thus, the *Mallory* rule, wherein a witness may not testify as to a criminal defendant's statement based on the acquiescence or silence of the defendant, does not impact on a scenario such as the instant case wherein the defendant testifies as to statements he made and denies silence altogether. See *Jarrett v. State*, 265 Ga. 28 (453 SE2d 461) (1995).

an attorney present. [Prosecutor]: And you refused to answer any questions until you had an attorney present and the law does not allow police to inteview [sic] defendants when they've invoked their right to counsel, isn't that correct, Mr. Fairbanks? [Appellant]: No, ma'am."[3]

From a review of the above, it is clear to this Court that appellant took the stand and implicitly waived any Fifth Amendment concerns when he voluntarily testified about his alleged statements to the police and his unrequited desire to converse further with an investigator, which desire was allegedly frustrated only by a non-responsive police force. Appellant cannot, then, on appeal claim a violation of his Fifth Amendment right to silence when he, himself, maintained that he did not remain silent. Thus, the state properly questioned him concerning the making of these alleged statements. "The shield provided by *Miranda* [*v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)] cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New York*, 401 U. S. 222, 226 (91 SC 643, 28 LE2d 1) (1971). The shield of *Miranda* may not be turned into a sword. *Cribbs v. State*, 204 Ga. App. 109 (418 SE2d 405) (1992). There was no error.

3. In his third and fourth enumerations of error, appellant takes exception to the trial court's charge to the jury on justification. Specifically, appellant claims as error the trial court's alleged failure to charge the jury on defendant's Request to Charge No. 3 regarding the state's burden to disprove an affirmative defense, and an alleged failure to charge the jury on defendant's Request to Charge No. 4 that "if they believed the defendant to have been justified, it would be their duty to acquit the defendant."[4]

We have reviewed the trial court's charge on justification and find appellant's assertions to be meritless. The trial court correctly charged the jury that "[t]he State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense"; correctly charged the jury that if "the defendant's conduct was justified, this is a defense to prosecution for any crime based on that conduct"; and correctly charged on the form of the verdict. "It is not necessary that the jury be given the exact language requested where the same

---

[3] Appellant does not herein claim a violation of any rights pursuant to *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[4] Appellant improperly relies upon *Anderson v. State*, 262 Ga. 7, 8 (2) (413 SE2d 722) (1992) for the proposition that a trial court must charge the jury specifically that it is their duty to acquit a defendant if they find the presence of justification. *Anderson* was overruled on this ground. *Coleman v. State*, 264 Ga. 253, 254 (3) (443 SE2d 626) (1994). Thus, defendant's Request to Charge No. 4 about which appellant complains was an incorrect statement of law and provides no basis for reversal.

principles fairly are given to the jury in the general charge." (Citations and punctuation omitted.) *Trotter v. State*, 216 Ga. App. 612, 614 (3) (455 SE2d 121) (1995). There was no error.

4. Lastly, appellant alleges ineffective assistance of counsel based upon (1) his attorney's failure to object to the introduction of the prior difficulties evidence based on *Williams*; and (2) his attorney's failure to object to the state's alleged comment on appellant's right to remain silent.

Error and prejudice must be shown in order to prevail on a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Prejudice requiring reversal entails a showing that, but for the enumerated error, there is a reasonable probability that the outcome of the proceedings would have been different. *Wade v. State*, 208 Ga. App. 700, 701 (431 SE2d 398) (1993).

With regard to appellant's contention concerning the admission of the prior difficulties evidence, this evidence was clearly admissible under the *Williams* standard as the evidence showed: (1) appellant was the perpetrator of the independent offense; (2) motive and the state of feelings between the parties; and (3) sufficient probative connection between the crime charged and the prior difficulties. See *Maxwell v. State*, supra at 74 (2). Thus, appellant cannot show that a timely objection on the part of counsel and the subsequent conformation of the hearing to comport with *Williams* would have produced a different result.

Further, for the reasons outlined in Division 2 above, we find appellant failed to show either error or prejudice with regard to counsel's failure to object to an alleged comment on appellant's Fifth Amendment right to silence.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MARCH 10, 1997 —
RECONSIDERATION DENIED MARCH 24, 1997 —

*Elizabeth A. Baker*, for appellant.
Charles H. Fairbanks, *pro se*.
*Robert E. Keller, District Attorney, Lisa S. Estes, Assistant District Attorney*, for appellee.